## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
## BUFFALO DIVISION

| | |
|---|---|
| **JOSEPH MILLER, individually and on behalf of his minor children attending an Amish school in Clymer and as a board member of that school; EZRA WENGERD, as representative of all Amish schools in the State of New York; JONAS SMUCKER, individually and on behalf of his minor children; DYGERT ROAD SCHOOL, PLEASANT VIEW SCHOOL a/k/a TWIN MOUNTAIN SCHOOL, SHADY LANE SCHOOL,**<br><br>*Plaintiffs,*<br><br>-against-<br><br>**DR. JAMES V. MCDONALD, in his official capacity as Commissioner of Health of the State of New York, and DR. BETTY A. ROSA, in her official capacity as Commissioner of Education of the State of New York,**<br><br>*Defendants.* | Civil Action No. 1:23-cv-00484-EAW |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................ii

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

ARGUMENT ..................................................................................................................9

   I. PLAINTIFFS ARE LIKELY TO PREVAIL UNDER THE FIRST AMENDMENT 10

      A.  The Statute is Not Generally Applicable Under *Fulton* Because It Permits
          Individualized Discretionary Review of Medical Exemptions .................................. 10

      B.  The Statute is Not Generally Applicable Under *Tandon* Because It Treats
          Comparable Secular Activity More Favorably Than Religious Exercise................. 13

      C.  The Statute and Its Enforcement Are Not Neutral ...................................................... 15

      D.  The Statute Infringes on Other Constitutionally Protected Rights ........................... 16

      E.  The Compulsory Vaccination Law Cannot Survive Strict Scrutiny.......................... 18

          1. Defendants Cannot Demonstrate a Sufficiently Compelling Interest.................... 18

          2. The Compulsory Vaccination Law is Not Narrowly Tailored............................... 20

   II.    THE AMISH WILL SUFFER IRREPARABLE HARM......................................... 24

  III.  THE BALANCE OF HARMS WEIGH IN FAVOR OF INJUNCTIVE RELIEF. 24

CONCLUSION................................................................................................................ 25

CERTIFICATE OF SERVICE ......................................................................................... 27

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)....................................................................................................... 16

*Agudath Israel of Am. V. Cuomo*,
   983 F.3d 620 (2d Cir. Dec. 28, 2020)……………………………………………………..10, 25

*A.H. v. French*,
   985 F.3d 165 (2d Cir. 2021)…………………………………………………………………...25

*Bosarge v. Edney*,
   No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. Lexis 67439
   (S.D. Miss. Apr. 18, 2023)............................................................................................ 12, 23

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011)……………………………………………………….…………………19

*Capitol Square Review and Advisory Bd. v. Capitol Square*,
   515 U. S. 753, 115 S. Ct. 2440 L. Ed. 2d 650 (1995)............................................................ 17

*Catholic Diocese v. Cuomo*,
   141 S. Ct. 63 (2020)...................................................................................................... 18, 24

*Cent. Rabbinical Cong. of the U.S. v. N.Y.C. Dep't of Health & Mental Hygiene*,
   763 F.3d 183 (2d Cir. 2014)............................................................................................... 14

*Church of Lukumi Babalu Aye v. City of Hialeah*,
   508 U.S. 520 (1993)....................................................................................... 15, 18, 19, 22

*Dahl v. Bd. of Trs. of W. Mich. Univ.*,
   15 F.4th 728 (6th Cir. 2021) .......................................................................................... 11, 23

*Doster v. Kendall*,
   54 F.4th 398 (6th Cir. 2022) .......................................................................................... 18, 23

*Elrod v. Burns*,
   427 U.S. 347 (1976)............................................................................................................ 24

*Employment Div.* v. *Smith*,
   494 U. S. 872 (1990) ......................................................................................... 10, 11, 16, 18

*Eternal Word TV Network, Inc. v. Sec'y, United States HHS*,
   756 F.3d 1339 (11th Cir. 2014) ........................................................................................... 24

*Fulton v. City of Philadelphia,*
   141 S. Ct. 1868 (2021) ......................................................................................... passim

*Goe v. Zucker,*
   43 F.4th 19 (2d Cir. 2022) ......................................................................................... 13

*Gonzales v. O Centro Espirita Beneficente Uniao,*
   546 U.S. 418 (2006) .................................................................................................. 19

*Goss v. Lopez,*
   419 U.S. 565 (1975) .................................................................................................. 24

*Int'l Dairy Foods Ass'n v. Amestoy,*
   92 F.3d 67 (2d Cir. 1996)………………………………………………………………10

*Kennedy v. Bremerton Sch. Dist.,*
   142 S. Ct. 2407 (2022) .................................................................................. 10, 16, 17

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
   454 F.3d 108 (2d Cir. 2006) ........................................................................................ 9

*M.A. v Rockland Cty. Dep't of Health,*
   53 F.4th 29 (2d Cir 2022) .................................................................................. 11, 13

*Mast v. Fillmore County,*
   141 S. Ct. 2430 (2021) ........................................................................................ 1, 19

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
   138 S. Ct. 1719 (2018) ............................................................................................. 15

*Navy Seal 1 v. Austin,*
   599 F. Supp. 3d 1233 (M.D. Fla. 2022)…………..……………………………………...23

*New Hope Family Servs. v. Poole,*
   966 F.3d 145 (2d Cir. 2020) ............................................................................ 16, 17, 18

*Nken v. Holder,*
   556 U.S. 418 (2009)……………………………………………………………………...24

*N.Y. Progress & Prot. PAC v. Walsh,*
   733 F.3d 483 (2d Cir. 2013)……………………………………………………………...10

*Paulsen v. County of Nassau,*
   925 F.2d 65 (2d Cir. 1991)........................................................................................ 24

*Pierce v. Socy. of Sisters*,
    268 U.S. 510 (1925).......................................................................................... 16

*Rochester Drug Co-op., Inc. v. Hiscox Ins. Co.*,
    466 F. Supp. 3d 337 (W.D.N.Y. 2020) ............................................................... 9

*Schelske et al v. Austin et al*,
    No. 6:2022cv00049 (N.D. Tex. 2022) LEXIS 229432............................…..23

*Soos v. Cuomo*,
    470 F.3d 268 (N.D.N.Y. 2020) ......................................................................... 24

*Spencer v. Nigrelli*,
    No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341
    (W.D.N.Y. Dec. 29, 2022) ................................................................................ 14

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021)............................................................................. passim

*Texas v. Johnson*,
    491 U.S. 397 (1989).......................................................................................... 17

*Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*,
    2021 U.S. Dist. LEXIS 214822 (D. Ariz. Nov. 5, 2021)................................ 11, 23

*U.S. Navy Seals 1-26 v. Biden*,
    27 F.4th 336 (5th Cir. 2022) ............................................................................. 23

*USN Seals 1-26 v. Biden*,
    578 F. Supp. 3d 822 (N.D. Tex., Jan 2, 2022) ................................................. 11

*Wisconsin v. Yoder*,
    406 US 205 (1972) ............................................................................... 1, 16, 19

## Statutes

N.Y. Pub. Health Law § 2164 ................................................................... passim

28 Pa. Code § 27.77(e)…………………………………………………….4

Oh. Rev. Code § 3313.671(C)…………………………………………..….4

N.J. Admin. Code §  8:57-4.4(d)…………………………………………..4

## Regulations

105 CMR 300.200…………………………………………………………..4

**<u>Rules</u>**

N.Y. Comp. Codes R. & Regs. tit. 10, §§ 66-1.1(l) and 66-1.3(c) (2019)............................. 12, 13

**<u>Constitutional Provisions</u>**

N.Y. Const., art. 9 § 1 ............................................................................................................ 24

U.S. Const. amend. I ........................................................................................................ passim

## INTRODUCTION

Members of the Amish faith "are religiously committed to living separately from the modern world. Maintaining that commitment is not easy. They grow their own food, tend their farms using pre-industrial equipment, and make their own clothes. In short, they lead lives of faith and self-reliance that have not altered in fundamentals for centuries." *Mast v. Fillmore County*, 141 S. Ct. 2430, 2430 (2021) (internal quotations omitted). For the Amish, this "traditional way of life … is not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living." *Wisconsin v. Yoder*, 406 US 205, 216 (1972). Recognizing this traditional way of life, the Supreme Court has concluded the Amish are entitled to exceptions to mandatory educational laws and even to paying certain taxes. *Id.* at 216, 222.

Plaintiffs are all sincere adherents to the Amish belief system, which includes educating their children in the Amish way, with Amish teachers, in Amish schools, on Amish-owned property. Given their commitment to a century's old way of life, it is hardly surprising that many Amish maintain profound religious objections to vaccines. As such, Plaintiffs, who run these Amish schools, do not require proof of vaccination from students to attend school. Their beliefs run contrary to New York Public Health Law § 2164 (the "**Compulsory Vaccination Law**"), which requires a school to refuse admission to a child who has not obtained the list of vaccines dictated by the State.

State authorities have refused to grant Plaintiffs a religious exemption to the Compulsory Vaccination Laws. Without that exemption, the State is barring the Amish children from attending their schools, and the New York Department of Health ("**DOH**") recently levied crippling financial penalties against the Amish and their schools, with threats of considerably greater future fines.

The refusal to provide the Amish religious exemptions when the state readily provides discretionary secular medical exemptions is unconstitutional under the First Amendment's Free Exercise Clause. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). In addition, the Compulsory Vaccination Law also violates Plaintiffs' rights to control the upbringing and education of their children, their free speech rights, and their rights to freedom of association.

## FACTUAL BACKGROUND

Plaintiffs Dygert Road School, Pleasant View School a/k/a Twin Mountain School, and Shady Lane School are all Amish community schools that do not receive any public funding, are located within their respective Amish communities, and have been fined for refusing to require their students to be injected with products that violate the religious beliefs of the school administrators, the children attending the school, and the parents of those children. Dkt. 1 ¶ 8. The schools will imminently shutter their doors as the families who fund these schools cannot afford these fines, much less any impending substantial future fines, civil and other penalties, and resulting enforcement actions against their properties. *Id.*

Plaintiff Ezra Wengerd was elected by the Amish community as a representative of all Amish schools in the State to deal with issues with the State, and his role and function is to preserve and protect the religious beliefs of the Amish community, which have been fundamentally impinged by Defendants. *Id.* ¶ 9. Plaintiffs Jonas Smucker and Joe Miller are fathers of children who attend different Amish schools, and they are also both board members of their children's respective schools. *Id.* All Plaintiffs have sincerely held religious beliefs that preclude vaccination. *Id.* These religious beliefs have been substantially burdened by Defendants, who are demanding that Plaintiffs surrender their sincerely held religious beliefs against injecting these products or surrender their religious beliefs requiring group instruction of their children. *Id.*

New York law mandates that every parent or guardian have certain vaccines administered to their children. *See* N. Y. Pub. Health Law § 2164(2)(a). The statute prohibits school attendance absent receipt of these vaccines or a medical exemption granted at the discretion of a physician and subject to further review and approval from state authorities. *Id.* § 2164(5), (7), and (8). The statute defines "school" broadly to mean "any public, private or parochial … school." *Id.* § 2164(1)(a).

Even though they do not accept public funds, are run entirely by the Amish community, and are located on community property, the one-room parochial schools Plaintiffs' children attend within the confines of their own community and without any state funding are still subject to New York's statutory scheme. Dkt. 1 ¶ 18. This scheme precludes children from gathering to learn, pray, and receive a religious education in these one-room settings, but does not prohibit them from gathering in any other settings, including to play, attend church or barn raisings, or do communal chores. *Id.*

New York recognized a religious exemption until June 2019 when it repealed this exemption. *Id.* ¶ 19. Presently, forty-four states have legislation allowing school-age children to be exempt from mandatory vaccination laws for religious reasons, including the neighboring states of Pennsylvania, New Jersey, Vermont, and Massachusetts, and one other state was recently enjoined by a federal court to provide a religious exemption for the upcoming school year. *Id.* Surrounding states deal with an outbreak, if one were to ever occur, by permitting the health department to exclude unvaccinated children (those with both medical and/or religious

exemptions) from school for a limited time, which is significantly less restrictive than prohibiting them from attending school altogether.[1]

After "audits" conducted by DOH in late 2021, on March 11, 2022, the DOH mailed a Statement of Charges and Notice of Hearing to the schools for non-compliance with the Compulsory Vaccination Law. *Id.* ¶¶ 31-32, Dkt. 1-1. On May 2, 2022, an administrative hearing was held regarding the Statement of Charges in which the Amish attended in person, while the Administrative Law Judge ("**ALJ**") and the DOH attorneys appeared via videoconference. Dkt. 1 ¶¶ 36-37, Dkt. 1-2. Ezra Wengerd represented the schools at the hearing and articulated his community's religious beliefs. Dkt. 1 ¶ 38. He began by stating:

> First of all, I want to thank God for the freedom that we still have and ask his blessings concerning this hearing. It looks like we have representation here from at least three or four different Amish communities and two different Mennonite communities. We helped each other in getting this statement together that I am about to read.

Dkt. 1 ¶ 38, Dkt. 1-2 at 1:50:24. He then proceeded to read a handwritten heart-felt statement from the Amish community, reflecting the Amish community's apology for violating the law of man, indicating the moral and religious burden the requirement placed on Plaintiffs, explaining that the Amish came to America hundreds of years ago to escape religious persecution, and due to their sincerely held religious beliefs they could not comply with the law at issue. Dkt. 1 ¶ 39, Dkt. 1-3.

The following is a copy of the statement read into the record by the Amish at the hearing:

---

[1] *See, e.g.,* 28 Pa. Code § 27.77(e); Oh. Rev. Code § 3313.671(C); N.J. Admin. Code § 8:57-4.4(d); https://www.healthvermont.gov/sites/default/files/documents/pdf/ID_IZ_CCP_Religious_Exemption.pdf; 105 CMR 300.200.

In Reply why we are not in compliant with the NYS Requirement of child hood vaccination

First of all, let us say, That we. As a peace buing Religious group. Are sincerely sorry that we are caosing the state a prob.. We are indeed grateful to the state of N.Y. for the many priveleges, Freedoms, & protections they have blessed us with, for many years.

As a Religous group, with our Roots here in America since the late 1600s. We your humble subjects the old order Amish + Mennonite Community Churches Will hereby give you part of our confession of faith

Our forefathers came to America for Freedom of religion in concerrns of living a God Fearing life + bringing up our children in a way, to hope through salvation, an everlasting life in Eternity. To do this we need to pot our full Trust in the Almighty God, as Proverbs 3:5 then in verse 6 we have the sure promise that he will direct our paths. Also in Mark 8:35 For whosoever seeketh to Save his life shall lose it. but whosoever loses his life for my sake and the gospels, the same shall save it. Yes Our Almighty God wants us to folly pot our faith + Trust in Him. which is in conflict to pot our Trust in vaccines We are also commanded to not be conformed to this world, Romans 12-1-2. If we honestly obey this, then it will affect everything we do, yes even in the way we try to Remain healty. Forcing us to violate our Religios belief will create a conflict which has no solution A Large percentage of the Amish + Mennonite Familys will choose other consequences before going against our Religios convictions

2

Also since some of the vaccines are based on fetal or aborted cell lines, we believe it would be an abomination to our Creator to inject such into our bodies

We the Amish & Mennonites our wondering & question why or how was the State able to take our Religious exemptions away, based on the Constitution in the First amendment. Also we are citizens of the U.S. as written in Amendment XIV ~ "Nor shall any state deprive any person of life LIBERTY or property"

We the Amish & Mennonites have deep convictions. Our whole way of life is based on how we understand, and interpret the bible. It is our utmost desire to live a quiet peacefull undeturbed life and obey those in authority over us. But once those laws are in conflict with what the bible teaches then we are commanded to obey God rather then man. Acts 5:29

In previous years we were always able & with the help of God to work out our differences with the state's or governments, Concerning our schools churches etc.

Our Schools are church run, small 1 room Parochial schools We do not accept any state aid for funding for our schools We plead with you & beg for pardon & grace with the help of God, That you can again grant us our Freedom of Religion, for the exemption of immozization for our children on Religious and Ethical grounds

We love our State of N.Y. & have no desire to move out ~ ~~~~~~~~~~~~~~~~~~~~~ we beleive in working together and having our children together in a happy social life in our schools

This statement was signed by the parents from the three Plaintiff schools. *Id*.

The DOH attorney responded by explaining "that there is no provision in the law that permits unvaccinated or non-immune students to attend school based on a non-medical exemption." Dkt. 1 ¶ 43, Dkt. 1-2 at 22:27. But Plaintiffs' children, like most Amish children, do not have any medical condition that would qualify for a medical exemption as they, for the most part, do not suffer from many of the medical conditions that plague children in non-Amish communities. Dkt. 1 ¶ 43. On May 25, 2022, the ALJ issued her Report and Recommendation finding that all three schools had violated the Compulsory Vaccination Law but recommended that no penalties be imposed. Dkt. 1 ¶ 47, Dkt. 1-4.

On June 21, 2022, the DOH, by its Senior Attorney, issued exceptions to the ALJ's Report and Recommendation. Dkt. 1 ¶ 49, Dkt. 1-5. He argued: "In 2019, the State legislature amended PHL § 2164 to remove the religious exemption, which means that medical exemptions are now the only exception." Dkt. 1, Dkt. 1-5 at 2. It also took exception with the "ALJ's recommendation that the Respondents pay no penalty, despite the Respondents' admission that they violated the statute and their promise to continue violating the law of 'man' is in essence a recommendation for administrative nullification of a duly enacted law" perturbed "they were aware of the requirements placed on them and made it clear that the matter could not be resolved with the Department because they have no intention of complying with the requirements." Dkt. 1 ¶ 50-51, Dkt. 1-5 at 2-3. He argued the crippling $100,000 fine was "lenient," threatening far higher fines next time, because "the proposed fines [of over $100,000] represent one day of non-compliance, for each school, respectively" and the crippling fines were appropriate because the "three respondent schools who were willfully noncompliant and promise to continue such noncompliance." Dkt. 1 ¶ 52, Dkt. 1-5 at 14 and 19.

7

On December 15, 2022, the DOH issued an Order sustaining the charges and imposing penalties. Dkt. 1 ¶ 54, Dkt. 1-6. The Order explained that "Respondents testified that they were aware of the legal requirements but intend not to comply because of an irreconcilable conflict between their religious beliefs and PHL §2164" and that the "Department does not doubt the genuineness of the Respondents' religious assertions." Dkt. 1 ¶ 55, Dkt. 1-6 at 4. However, the DOH explained "the Legislature amended PHL § 2164 to remove the religious exemption, leaving medical exemptions as the only exception to the school immunization requirements in the statute." *Id.* The Order imposed a total of over $52,000 penalty against Dygert Road School, $46,000 against Twin Mountains School, and $20,000 against Shady Lane School. Dkt. 1 ¶ 56, Dkt. 1-6 at 5-6. The DOH also demanded that payment for the over $100,000 "civil penalty shall be made within thirty (30) days," and if not timely paid, threatened Plaintiffs with additional crippling sanctions. Dkt. 1, ¶ 57, Dkt. 1-4 at 1-2.

In letters to the Plaintiff schools, dated May 3, 2023, the DOH again threatened legal action against the Amish stating that they "were assessed a civil penalty which remains PAST DUE. Within thirty (30) days of the date of this notice, your case will be referred to our General Counsel for legal action." Siri Decl. ¶ 2, Ex. A.[2]

Because the schools are not publicly funded and have no reserve cash, they are unable to pay the penalties. Dkt. 1 ¶ 58. Due to the crippling financial penalties that have been levied against them, and the threat of even larger penalties should the Amish continue to adhere to their sincerely held religious beliefs, these schools will be unable to operate and the children who attend these schools will no longer receive the parochial education in a group setting that comports with their community's religious beliefs. *Id.* In the same vein, if the schools shut down due to Defendants

---

[2] References to "Siri Decl." are to the Declaration of Aaron Siri, Esq., dated June 9, 2023, filed herewith.

and the threats of future enforcement, the individual parent Plaintiffs would be subject to penalties and enforcement by Defendants due to the compulsory school attendance law. *Id*.

Moreover, N.Y. Pub. Health Law § 2164(2)(a) does not cause Plaintiffs' children to disappear from New York or their communities. These children are active members of their communities, routinely participating in religious events, gatherings, and socializing with friends and families within the community. Dkt. 1 ¶ 66. They are not prohibited from doing so by New York law but yet they cannot attend school with one another.

## ARGUMENT

Plaintiffs seek a preliminary injunction to preserve the *status quo* by prohibiting Defendants from enforcing the Compulsory Vaccination Law against them. This will permit their children to continue to attend school during the pendency of this action and prohibit further enforcement of ruinous fines. Plaintiffs' Amish children attended school for years after the State repealed the religious exemption in June 2019, during which the DOH took no action. *Id*. ¶ 30. In fact, the DOH only issued its first notice of violation against the Amish in March 2022, over two and a half years after repeal of the state's religious exemption, and only very recently assessed penalties. *Id*. Plaintiffs' children attended school this entire period. *Id*. Thus, by prohibiting the DOH from enforcing the Compulsory Vaccination Law against the Amish, the Court will be preserving the *status quo ex ante*, making this a classic prohibitory injunction. *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 454 F.3d 108, 114 (2d Cir. 2006) ("A prohibitory injunction is one that forbids or restrains an act.").

In the Second Circuit, a prohibitory injunction may be granted on a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Rochester Drug Co-op., Inc.*

*v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 348 (W.D.N.Y. 2020). Plaintiffs' requested injunction satisfies each of these factors including because, under strict scrutiny, the state cannot justify trampling on Plaintiffs' religious liberty, and deprivation of a constitutional right and excluding a child from school each cause irreparable harm.

Moreover, in cases alleging constitutional injury, a strong showing of a constitutional deprivation that results in non-compensable damages ordinarily warrants a finding of irreparable harm. *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996); *see also Agudath Israel of Am. V. Cuomo*, 983 F.3d 620 (2d Cir. Dec. 28, 2020). Likelihood of success on the merits is therefore "the dominant, if not the dispositive, factor." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

## I.     PLAINTIFFS ARE LIKELY TO PREVAIL UNDER THE FIRST AMENDMENT

The Supreme Court recently reaffirmed that the Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) (*quoting Employment Div.* v. *Smith*, 494 U. S. 872, 877 (1990)). Defendants' actions threaten Plaintiffs' ability to "live out their faiths in daily life" by forcing them to compromise their strongly held religious objections to vaccination while permitting secular exemptions to these same requirements. The Compulsory Vaccination Law thus fails the general applicability and neutrality tests, and violates Plaintiffs' rights to free exercise, speech, and assembly and to regulate their children's upbringing. Dkt. 1 ¶ 60.

### A.     The Statute is Not Generally Applicable Under *Fulton* Because It Permits Individualized Discretionary Review of Medical Exemptions

Strict scrutiny is triggered if the law in question is not generally applicable. *Kennedy*, 142 S. Ct. 2407 at 2422. A government policy "will fail the general applicability requirement if it

'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' *or* if it provides 'a mechanism for individualized exemptions.'" *Id.* (emphasis added) (*quoting Fulton*, 141 S. Ct. at 1876). A law is also not generally applicable where it invites "the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1872. "'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.'" *Id.* (quoting *Smith*, 494 U.S. at 884). The Compulsory Vaccination Law fails the general applicability test because it allows discretionary medical exemptions but prohibits a similar exemption process for those who possess sincerely held religious reasons for declining vaccination.

*Fulton* makes clear that where the government grants discretionary secular exemptions, the law *per se* fails the general applicability test where it refuses to allow religious exemptions. Federal courts around the country, including the Second Circuit, have reached the conclusion that, pursuant to *Fulton*, granting discretionary secular exemptions, including medical exemptions, to vaccination policies renders a law not generally applicable thus requiring strict scrutiny review of any refusal to grant a religious exemption. *See Dahl v. Bd. of Trs. Of W. Mich. Univ.*, 15 F.4th 728, 733 (6th Cir. 2021) (vaccine policy not generally applicable under *Fulton* because the government had "discretion to extend exemptions in whole or in part"); *Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, 2021 U.S. Dist. LEXIS 214822 at *16 (D. Ariz. Nov. 5, 2021) (same); *USN Seals 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex., Jan 2, 2022) (vaccine policy not generally applicable under *Fulton* because it invited "individualized assessment of the reasons why a servicemember is not vaccinated."); *M.A. v Rockland Cty. Dep't of Health*, 53 F.4th 29, 38 (2d Cir 2022) ("[T]he Emergency Declaration was not generally applicable because, by allowing a medical exemption,

11

it 'prohibit[ed] religious conduct while permitting secular conduct that undermine[d] the government's asserted interests in a similar way.'") (Parks, concurring) (citing *Fulton*, 141 S. Ct. at 1296); *Bosarge v. Edney*, No. 1:22cv233-HSO-BWR, 2023 U.S. Dist. LEXIS 67439, at *27 (S.D. Miss. Apr. 18, 2023) (the state's vaccination scheme was neither "neutral or generally applicable" because "there was a method by which Mississippi officials could consider [and approve or deny] secular exemptions, particularly medical exemptions") (citing *Fulton*, 141 S. Ct. at 1877)).

Here, the medical exemption scheme is discretionary. Through the plain language of the relevant statute, New York gave school administrators and government officials broad latitude to accept or deny secular exemptions on an individualized basis. This process begins with a "signed, completed medical exemption form approved by the NYSDOH … from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to a specific immunization" "consistent with ACIP guidance or other nationally recognized evidence-based standard of care" and "must be reissued annually." N.Y. Comp. Codes R. & Regs., tit. 10, §§ 66-1.1(l) and 66-1.3I *implementing* N.Y. Pub. Health Law § 2164(8) ("If any physician licensed to practice medicine in this state certifies that such immunization may be detrimental to a child's health, the requirements of this section shall be inapplicable.").

Each school official then possess enormous independent and personalized discretion to override a physician's discretionary recommendation, including the ability to require additional information and ultimately make the final discretionary decision to grant or deny a medical exemption. *Id*. In fact, this extraordinary latitude given to school administrators was recently challenged as *ultra vires* and unconstitutional, and New York vigorously defended its delegation

of discretionary power to school officials and prevailed. *Goe v. Zucker*, 43 F.4th 19, 33 (2d Cir. 2022) ("New York State law, as it has for decades, delegates to school officials the authority to grant a medical exemption from the State's school immunization requirements") (citing N.Y. Pub. Health Law § 2164(7)(a) and 10 N.Y. Comp. Codes R. & Regs., tit. 10, § 66-1.3(c)). Dkt. 1 ¶ 64. This broad multilayer discretionary process is why medical exemption rates vary wildly between New York schools. *Id*. ¶ 65. Hence, it is the functional practice in New York to permit local government officials to "decide which reasons for not complying with the policy are worthy of solicitude," triggering strict scrutiny. *Fulton*, 141 S. Ct. at 1879.

###    B.    The Statute is Not Generally Applicable Under *Tandon* Because It Treats Comparable Secular Activity More Favorably Than Religious Exercise

Moreover, in *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) the Supreme Court explained that government regulations "are not … generally applicable and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." (Emphasis in original.) "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue," and "[c]omparability is concerned with the risks various activities pose." *Rockland Cty. Dep't of Health*, 53 F.4th 29, 38*; see also Tandon*, 141 S. Ct. at 1296 (comparability "is concerned with the risks various activities pose, not the reasons why"). The secular and religious activity at issue here (*i.e.*, non-vaccination) is not just comparable, it is exactly the same, with the reasons for opting out of compulsory immunization being the only thing that differs. *See Tandon*, 141 S. Ct. at 1297 (the government cannot "assume the worst when people [exercise their religion] but assume the best when people [engage in secular activities].'" (Internal citations omitted)). Where the government

permits secular exceptions to a policy, it has the burden to "show that the religious exercise at issue is more dangerous" than comparable secular activity. *Tandon*, 141 S. Ct. at 1297.

*Tandon's* comparability test also cannot logically be restricted to only comparing similar secular activities in a school setting. *See Tandon*, 141 S. Ct. at 1296 (proper comparators are "*any*" activity that pose similar risks) (emphasis in original); *see also Cent. Rabbinical Cong. of the U.S. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014) (proper comparator is any activity that purportedly "is at least as harmful" to the government's purported interest underlying restrictions on religious freedoms); *Spencer v. Nigrelli,* No. 22-CV-6486 (JLS), 2022 U.S. Dist. LEXIS 233341, at *20 (W.D.N.Y. Dec. 29, 2022) (proper comparators for concealed carry restrictions in churches were secular establishments allowing concealed carry).

Indeed, Amish children and adults, irrespective of vaccination status, can still congregate in barn raisings, church attendance, community festivals, and the innumerable events at which Amish communities and family congregate. Dkt. 1 ¶ 66. Outside the context of the Amish community, there exist few if any restrictions on unvaccinated individuals congregating in almost any context, including malls, arenas, houses of worship, strip clubs and casinos. *Id*. Even students attending universities still *must* be afforded a religious exemption under New York law as well as all medical professionals required to get certain vaccines. *Id*.[3]

Even if the comparability analysis could somehow logically be confined to a school setting, New York permits unvaccinated individuals in the education system, including teachers, administrators, maintenance staff, bus drivers, students over age 18, or any other unvaccinated adult or child who might visit a school. *Id*. Further, the total number of unvaccinated children that

---

[3] The Compulsory Vaccination Law also does not apply to adults, who comprise over 79% of New York's population. (Dkt 1 ¶ 66).

attend schools in New York without a medical exemption is more than triple the entire Amish population in New York. Dkt. 1 ¶ 67. There are approximately 66,000 students without all mandated vaccines and without a medical exemption enrolled in New York schools (excluding Amish schools), while, in contrast, the entire Amish population in New York is only 21,000. *Id.*

In sum, the State's choice to permit discretionary medical exemptions while refusing to extend a religious exemption option to Plaintiffs means that N.Y. Pub. Health Law § 2164 is not generally applicable.

## C.    The Statute and Its Enforcement Are Not Neutral

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. 1868 at 1877. If state decision-makers "endorse[] the view that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome" neutrality is violated. *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018). "The Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." *Id.* at 1731, *citing Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993). The DOH was clear about its animus towards Plaintiffs and their religious beliefs, characterizing such beliefs as willful non-compliance. Dkt. 1 ¶ 71, Dkt. 1-5 at 2. It also pushed for a significant penalty because, "Respondents' admission that they violated the statute and their promise to continue violating the law of 'man' is in essence a recommendation for administrative nullification of a duly enacted law." *Id.* And DOH's final order reflected this animus in assessing ruinous fines: "Respondents testified that they were aware of the legal requirements but intend not to comply because of an irreconcilable conflict between their religious beliefs and PHL §2164." *Id.* If those statements sound like *Masterpiece Cakeshop, Ltd.*, 138 S. Ct.

1719, 1729 all over again, it is because the circumstances are indistinguishable. But there is more, New York's purported concern for public safety is only urgent when it seeks to eradicate religious observance related to mandatory vaccination for school. In contrast, in all other contexts, the State is disinterested in the purported threats posed by those unvaccinated in virtually every other area of life, including the over 66,000 children enrolled in school without required vaccination and without a medical exemption. Dkt. 1 ¶ 67.

### D.    The Statute Infringes on Other Constitutionally Protected Rights

In *Yoder*, 406 US at 234-35, the Supreme Court acknowledged that Free Exercise rights can overlap with and can be inherently intertwined with the right to make decisions regarding the upbringing of one's child as recognized in *Pierce v. Socy. of Sisters*, 268 U.S. 510 (1925). There, the Court reached this conclusion due to the Amish's "religious beliefs, the interrelationship of belief with their mode of life, the vital role that belief and daily conduct play in the continued survival of … Amish communities and their religious organization, and the hazards presented by the State's enforcement of a statute generally valid as to others." *Id.* at 235. Given the combination of free exercise and parental interests here, this also triggers strict scrutiny. *Yoder*, 406 U.S. at 217, 233. *See also Smith*, 494 U.S. 872 at 881 (acknowledging hybrid rights that triggered strict scrutiny). Here, the Compulsory Vaccination Law implicates Plaintiffs' right to free exercise as well as their rights to free speech (including by not adhering to the Government's preferred vaccination message and to gather to speak and communicate for educational purposes), to associate (including by gathering to attend group school settings), and to regulate the upbringing and education of their children, all triggering strict scrutiny. *Id.*; *Kennedy*, 142 S. Ct. at 2421; *New Hope Family Servs. v. Poole*, 966 F.3d 145, 176 (2d Cir. 2020) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)); *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213

(2013). In that regard, the Compulsory Vaccination Law presents a content-based restriction equally triggering strict scrutiny – it prohibits gathering of certain children based on the message that is being conveyed. If the gathering is for the purpose of communicating and receiving educational messaging, it is prohibited; but if they gather to raise a barn, there is no prohibition.

Furthermore, as the Supreme Court acknowledged last year in *Kennedy*, "[w]here the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities," and further explaining:

> That the First Amendment doubly protects religious speech is no accident. It is a natural outgrowth of the framers' distrust of government attempts to regulate religion and suppress dissent. "[I]n Anglo-American history, . . . government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U. S. 753, 760, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995).

142 S. Ct. at 2421.

In addition to parents, Plaintiffs also include the Amish school leaders who the Compulsory Vaccination Law deputizes to enforce the law by excluding children who have not received mandated vaccines. Dkt. 1 ¶ 78. By mandating that these school leaders agree with the state's policy, the Compulsory Vaccination Law compels speech that those Plaintiffs are opposed to on religious grounds. In so doing, the Compulsory Vaccination Law violates those Plaintiffs' free speech rights. *New Hope*, 966 F.3d at 170-71. The Supreme Court has also recognized a right of association to engage in protected activities, such as the exercise of religion or to conduct education. *New Hope*, 966 F.3d at 178. If Plaintiffs choose to vaccinate their children against their and their community's religious beliefs, they risk their association with their community (Dkt. 1 ¶ 79); and by demanding that the school administrator Plaintiffs refuse admission to the unvaccinated, the Compulsory Vaccination Law makes association with those schools, and with

those plaintiffs "'less attractive' for those who would otherwise combine their voices with [theirs] in order to convey their shared beliefs and values more effectively." *New Hope*, 966 F.3d at 179. The infringement of Plaintiffs' free exercise rights, coupled with infringement of their rights to educate, associate and speak, involve hybrid rights that also trigger strict scrutiny under *Smith*, 494 U.S. at 881-882.

### E.    The Compulsory Vaccination Law Cannot Survive Strict Scrutiny

As demonstrated above, strict scrutiny is triggered. *Church of Lukumi*, 508 U.S. at 546. A law can "survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton,* 141 S. Ct. at 1881 (quoting *Church of Lukumi*, 508 U.S. at 546). Just because a law is intended to target infectious disease, strict scrutiny "is not watered down." *Tandon*, 141 S. Ct. at 1298. Even during an international pandemic, the Constitution is not suspended. *See Catholic Diocese v. Cuomo*, 141 S. Ct. at 66; *Tandon*, 141 S. Ct. at 1297. Under *Tandon* and *Diocese of Brooklyn,* First Amendment protections are not suspended even during a worldwide pandemic, demonstrating that regulations that fail to treat comparable secular and religious activities with an even hand will be stricken.

### 1.    Defendants Cannot Demonstrate a Sufficiently Compelling Interest

Whatever interests New York may advance in support of its law, they are not so compelling as to prohibit secular exceptions. A "law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547. In the context of similar mandatory immunization requirements, courts across the country have rejected claims of a compelling interest to deny religious exemptions where the government grants secular medical exceptions to the otherwise mandatory immunization requirements. *See, e.g., Doster,* 54 F.4th 398, 423; *U.S. Navy Seals 1-26*, 27 4th 336, 352. The

Supreme Court is clear that where government permits secular conduct that it asserts endangers public health, it cannot then credibly assert a compelling interest in restricting comparable religious activity. *See, e.g., Church of Lukumi,* 508 U.S. at 542-546; *Mast*, 141 S. Ct. 2430 at 2432.

In reviewing refusal of a religious exemption, courts cannot "rely on 'broadly formulated interests'" asserted by Defendants, but instead "must 'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants.'" *Fulton,* 141 S. Ct. at 1881 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao*, 546 U.S. 418, 431 (2006)). "The question, then, is not whether the [DOH] has a compelling interest in enforcing its" vaccination "policies generally, but whether it has such an interest in denying an exception to" the Amish plaintiffs. *Id. see also Mast*, 141 S. Ct. at 2433; *Gonzales*, 546 U.S. at 431 ("In *Yoder* … [w]e recognized that the State had a 'paramount' interest in education, but held that 'despite its admitted validity in the generality of cases, we must searchingly examine the interests that the State seeks to promote . . . and the impediment to those objectives that would flow from recognizing *the claimed Amish exemption*.'" (Emphasis in original.); *see also Bosarge*, 2023 U.S. Dist. Lexis 67439, at *10.

Thus, Defendants bear "the burden of presenting a 'compelling reason why' [they] cannot offer the Amish this same" exemption for religious purposes that they offer to thousands of people for secular purposes. *Mast*, 141 S. Ct. at 2433. Defendants cannot meet this burden.

Whatever abstract public health interest New York has, it does not have a specific and compelling public health interest in forcing the Amish to vaccinate their children, and persecuting the Amish will *never* cause them to vaccinate their children. Moreover, "the Government does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011). Their "traditional way of life … is not merely a matter of personal preference, but one of deep religious conviction." *Yoder*, 406 U.S.

at 216. As explained by Plaintiff Ezra Wengerd, the Amish "will choose prison time or a martyr's death before going against their convictions." Dkt. 1 ¶ 87. This is not exaggerated rhetoric. The Amish have shown a willingness over the years to accept even jail time rather than compromise their religious beliefs, such as when Kentucky and Ohio tried to mandate the use of bright reflective triangles on Amish buggies, or when Pennsylvania tried to force the Amish to send their children to secular schools or bring outhouses into compliance with state sewage laws. *Id*. Here, the DOH imposed ruinous financial penalties against the Amish for exercising their religious beliefs, and has threatened even greater penalties, but the Amish have held fast to their beliefs. *Id*. That is the very nature of sincerely held religious beliefs: no amount of state pressure is going to cause the Amish to violate their beliefs and thereby endanger their immortal souls. Hence, the only thing forced compliance will accomplish is to punish religious believers. *Id*. ¶ 88.

It is telling that New York's purported concern for public safety is only urgent when it seeks to eradicate religious observance related to mandatory vaccination for school. In contrast, in all other contexts, the State is disinterested in the purported threats posed by those unvaccinated, including in virtually every other area of life and in the over 66,000 children enrolled in school without required vaccinations and without a medical exemption. Dkt. 1 ¶ 67. There is no indication that the State levied any penalties against these schools as the State did with Plaintiffs. The State's selective approach to enforcement, targeting religious believers with crippling penalties but not these other schools, further underscores that the state's asserted healthcare goals are not actually compelling. Dkt. 1 ¶ 89.

### 2.    The Compulsory Vaccination Law is Not Narrowly Tailored

Even if the government's interest is sufficiently compelling, New York's Compulsory Vaccination Law still cannot withstand strict scrutiny because it lacks narrow tailoring. "[N]arrow

tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest." *Tandon*, 141 S. Ct. at 1296-97. When strict scrutiny applies, a government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881 (quotation omitted). New York's Compulsory Vaccination Law can never satisfy this requirement given that 45 other states have religious or philosophical exemption options to childhood school vaccination requirements, evidencing that a more narrowly tailored approach plainly exists.

Moreover, even if 45 other states had not conclusively demonstrated that less restrictive means exist and can be seamlessly implemented, New York's law lacks narrow tailoring on additional grounds because it is both over-inclusive and under-inclusive relative to the public health interest it purportedly seeks to achieve. The Compulsory Vaccination Law is underinclusive because it only applies to certain unvaccinated children and only in a school setting. Events like barn raisings, church services, community festivals, and all other Amish gatherings do not require vaccination. Dkt. 1 ¶ 91. Given their religious beliefs, most, if not all, of the Amish community members who are above school age are unvaccinated. *Id.* As such, the Compulsory Vaccination Law is plainly underinclusive.

The law is also underinclusive because it permits medical exemptions for schoolchildren. If a child with medical exemption can safely attend school, so can a child with a religious exemption. *Id*. ¶ 92. The law's under inclusivity is further magnified by the fact that adults in the school system are exempt from New York's immunization requirements nor are there any vaccine requirements in nearly any other aspect of life in New York for children or adults. *Id*.

The Compulsory Vaccination Law is also overbroad for several reasons. First, it fails to include a reasonable religious exemption for the Amish's sincerely held religious beliefs. *Id*. ¶ 93. Second, states that surround New York provide religious exemptions and deal with any potential cases by permitting the health department to exclude children with medical and religious exemptions from school, which is less restrictive than prohibiting them from attending school altogether. *Supra* fn. 1.

Third, and more generally, lawmakers rationalized the elimination of the religious exemption to the Compulsory Vaccination Law on grounds it was purportedly being misused. In a knee-jerk reaction to an uptick in measles cases, none of which occurred in the Amish community, the Legislature eliminated *all* religious objections to compulsory vaccination, even for those who, like Plaintiffs, undisputedly possess sincere religious beliefs precluding them from vaccinating their children, have had such beliefs for decades, and demonstrate those beliefs by refraining from many comforts of modern life. Dkt. 1 ¶ 94. This is a dramatically overbroad response. The Legislature could have confronted this concern by, *inter alia*, instituting a standardized method for reviewing applications for religious exemptions to ensure they are granted only to those who, like Plaintiffs, plainly have sincere religious beliefs. *See Lukumi*, 508 U.S. at 539 (A law is suspect "if First Amendment freedoms are curtailed to prevent isolated collateral harms not themselves prohibited by direct regulation.").

Finally, the Compulsory Vaccination Law is also overbroad because at least three of the six vaccines required for kindergarten through the eighth grade by the Compulsory Vaccination Law (DTaP, IPV, and MenACWY) do not prevent infection and transmission or produce community immunity (*i.e.*, "herd immunity"). Siri Decl. ¶¶ 13-19; Dkt. 1 ¶ 95. These vaccines may to some degree provide personal protection by potentially preventing recipients from

experiencing symptoms, which Plaintiffs have gladly declined in favor of upholding their religious beliefs. *Id*. Moreover, CDC does not have a single documented case of Hepatitis B being transmitted in a school setting. Siri Decl. ¶ 20; Dkt. 1 ¶ 95. The only other vaccines required for school are the Chicken Pox and the MMR vaccine, and there is no health imperative to refuse religious exemptions to the Amish for these two vaccines, both of which are not only developed with aborted fetal cell lines but include the DNA and cellular material from aborted fetal cell lines in each dose.  Siri Decl. ¶¶ 3-12; Dkt. 1 ¶¶ 14, 75. However, despite these realities, the state destroyed the option for religious objections to *all* required vaccines, further demonstrating overbreadth of the law.

New York deployed a blunt hammer and, in one stroke, obliterated every possibility for Plaintiffs to simultaneously abide by the law, and educate their children consistent with their religious convictions. *Id*. ¶ 96. In virtually identical circumstances, a federal district court recently found such a policy likely cannot withstand strict scrutiny. *See Bosarge*, 2023 U.S. Dist. Lexis 67439, at *27. And the *Bosarge* decision is just the most recent example of a long line of cases finding vaccination mandates cannot survive strict scrutiny where religious objectors' beliefs are substantially burdened by compulsory vaccination policies. *See, e.g., U.S. Navy Seals 1-26,* 27 F.4th at 350-52; *Doster,* 54 F.4th at 423-27; *Dahl,* 15 F.4th at 734-35; *Schelske,* No. 6:22-CV-049-H, 2022 U.S. Dist. LEXIS 229432, at *81-87; *Navy Seal 1 v. Austin*, 599 F. Supp. 3d 1233, 1242 (M.D. Fla. 2022); and *Thoms v. Maricopa Cnty. Cmty. Coll. Dist*., No. CV-21-01781-PHX-SPL, 2021 U.S. Dist. LEXIS 214822, at *32 (D. Ariz. 2021). Because the Compulsory Vaccination Law cannot withstand strict scrutiny review, Plaintiffs are likely to prevail on the merits of their First Amendment claims.

## II.     THE AMISH WILL SUFFER IRREPARABLE HARM

Plaintiffs have endured irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir. 1991) ("when deprivation of rights derives from allegations of a First Amendment violation, irreparable harm presumptively exists."). That extends to the loss of "free exercise rights 'for even minimal periods of time.'" *Tandon*, 141 S. Ct. at 1297. The violation of Plaintiffs' First Amendment rights alone constitutes irreparable injury as a matter of law. *Id.; Cuomo*, 141 S. Ct. at 67-68.

Plaintiffs' children are also evicted from the State's educational system, even though New York's Constitution combined with the Fourteenth Amendment guarantees a free public-school education. *See* N.Y. Const., art. 9 § 1 (requiring a system of free public education for all children in the State); *see also Goss v. Lopez,* 419 U.S. 565 (1975) (when state law creates a right to public education, it is protected by the Due Process Clause of the Fourteenth Amendment). Dkt. 1 ¶ 98. While New York guarantees a free education and permits children who remain unvaccinated for medical reasons to obtain a free education, the State forbids Plaintiffs' children from attending school on Amish property. Moreover, efforts to collect on the ruinous fines that Defendants have already taken steps to impose are equably irreparable harm. *Eternal Word TV Network, Inc. v. Sec'y, United States HHS*, 756 F.3d 1339, 1349-1350 (11th Cir. 2014); *Soos v. Cuomo*, 470 F.3d 268 (N.D.N.Y. 2020). These constitute irreparable injury, and Plaintiffs' injuries—past, ongoing, and imminent—cannot be remedied by a later-issued court order. Dkt. 1 ¶ 98.

## III.     THE BALANCE OF HARMS WEIGH IN FAVOR OF INJUNCTIVE RELIEF.

The remaining injunction factors, balance of harms and public interest, merge where there is a loss of constitutional rights. *See Tandon*, 141 S.Ct. at 1297; *Nken v. Holder*, 556 U.S. 418, 435

(2009); *A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021) (finding balance of harms tilts in favor of Plaintiffs where there is a constitutional violation and the public interest is in favor of vindicating constitutional rights); *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) ("No public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal."). As discussed above, in the absence of an injunction, Plaintiffs will be forced to discontinue their centuries-old tradition of communal learning, potentially resulting in their children's educations being placed on hold for the duration of this case. On the other hand, the Amish communities have remained unvaccinated for hundreds of years. As such, Defendants cannot demonstrate that the State's public health concerns require Plaintiffs to discard their religious convictions and their constitutional rights immediately. If the system has worked for hundreds of years, asking the State to wait a little longer to trample on Plaintiffs' religious beliefs cannot be seen as a true hardship.

## CONCLUSION

For the foregoing reasons, Plaintiffs possess clear entitlement to injunctive relief. Therefore, Plaintiffs respectfully request that the Court grant a preliminary injunction enjoining Defendants from implementing and enforcing the Compulsory Vaccination Law unless they provide the option for a religious exemption.

Dated: June 11, 2023.

Respectfully submitted,

*/s/ Elizabeth A. Brehm*

SIRI & GLIMSTAD LLP
Aaron Siri, Esq.*
New York Bar Number: 4321790
Elizabeth A. Brehm, Esq.
New York Bar Number: 4660353
Walker D. Moller, Esq.*
Texas Bar Number: 24092851
745 Fifth Ave, Suite 500

New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
wmoller@sirillp.com

Christopher Wiest**
Kentucky Bar No: 90725
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

*Pro hac vice*
** Pro hac vice submitted*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

**JOSEPH MILLER, individually and on behalf of his minor children attending an Amish school in Clymer and as a board member of that school; EZRA WENGERD, as representative of all Amish schools in the State of New York; JONAS SMUCKER, individually and on behalf of his minor children; DYGERT ROAD SCHOOL, PLEASANT VIEW SCHOOL a/k/a TWIN MOUNTAIN SCHOOL, SHADY LANE SCHOOL,**

*Plaintiffs,*

-against-

**DR. JAMES V. MCDONALD, in his official capacity as Commissioner of Health of the State of New York, and DR. BETTY A. ROSA, in her official capacity as Commissioner of Education of the State of New York,**

*Defendants.*

Civil Action No. 1:23-cv-00484-EAW

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2023, a true and correct copy of the foregoing Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction was electronically filed with the Clerk of the District Court using its CM/ECF system and was served by CM/ECF on all counsel or parties of record.

*/s/Elizabeth A. Brehm*

27